UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MICHAEL E. BRACEY,

    Defendant.
                                        /

Case No. 07-20606

Honorable Nancy G. Edmunds

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE [6]**

Defendant is charged in a three-count indictment with: (1) Possession with Intent to Distribute Crack Cocaine in violation of 21 U.S.C § 841(a)(1); (2) Possession of Firearms in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C § 924 (c)(1)(A); and (3) Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g) . For the reasons set forth below and those stated at the April 3, 2008 hearing, Defendant's Motion to Suppress Evidence [6] is DENIED.

**I. Facts**

On April 8, 2006 a search warrant was executed at 19567 Bradford, Detroit, Michigan. "The search of the residence produced approximately 77 grams of cocaine base, $1,586 in U.S. currency, two firearms, crack cocaine and marijuana in plain sight, mail addressed to Defendant, photos of Defendant, items used to cook cocaine base, and two digital scales." (Gov't.'s Mot. at 2).

The Search Warrant lists Defendant with the alias of "Tank", as well as giving a

very detailed description of the location to be searched.  Detroit Police Officer C. Diaz was the affiant and investigating officer.  Affiant Diaz obtained much of her information from her personal observations of Defendant ("S1"), as a well as from a reliable informant ("SOI").  The supporting affidavit provides that:

> Within the last twenty four hours from the date of this affidavit for search warrant, the SOI informed affiant that (s)he observed "Tank," who will be referred to as S1 for the remainder of this affidavit for search warrant, in possession of an amount of cocaine for sale.  The SOI informed that S1 transports cocaine in a (1984) four door, black Oldsmobile with a white vinyl top and a Michigan license place of ADY-9668 (registered to Tiffany Jones of 4456 Fairview per Secretary of State Records). The SOI also informed of S1's routine, stating that S1's clients will call him on his cell phone to order cocaine and then meet him at a predetermined location where the narcotic transaction will take place.  The SOI also stated that S1 makes several trips back and forth to his house to pick up more cocaine as clients request delivery.
>
> * * *
>
> Within the last forty hours from the date of this affidavit for search warrant, affiant followed S1 from 19567 Bradford to the Sunoco gas station located at 9000 Conner, where S1 met with two separate individuals, consistent with S1's method of doing a drug transaction.  None of the individuals, including S1, pumped gas or went into the business establishment.  S1 met with the two separate individual inside of his car for less than five minutes and left the location.  Affiant also followed S1 to at least three other separate narcotic locations, some which are currently under investigation.  At one of the narcotic locations, affiant observed a lot of activity, including coming and going of high priced vehicles, which affiant finds consistent with that of drug dealing activities based on past experience.
>
> On April 7, 2006, affiant, set up surveillance at 19567 Bradford for approximately thirty minutes and observed two separate individuals arrive late at night, stay less than seven minutes and leave the area.  The first individual drove up in a silver four-door, 2006 Chrysler Charger with a Michigan license plate of AET-7297 (per the Secretary of State records, no registration information).  The second individual drove up in a black vehicle with a license plate of YSS-421 (registered to Afredia Diggs of 10974 Haverhill).  Affiant has learned that S1 only allows selected clients to his house, when they are going to buy a large quantity of narcotics.  S1 is known to be very secretive of where he stays to prevent being targeted and getting robbed.  S1 also attempts to maintain traffic to a mere minimum in an attempt to avoid detection and capture from police agencies.

Affiant checked S1's criminal history, which reveals four arrests for Dangerous Drugs including Weapons Charges.

The Affiant has participated in multiple narcotic raids in the City of Detroit. In the overwhelming majority of these raids illegal firearms and vicious dogs are found to be used in the protection of the illegal narcotic trade and affiant seeks to remove same. Based on the facts stated above along with training and experience, affiant has probable cause to believe that the above items will be found at the above-described location.

(Warrant Aff. at 2-3.)

Defendant's motion to suppress argues that the supporting affidavit lacks probable cause because it fails to show that the items to be seized would be at the Bradford location. Defendant further argues that Officer Diaz's reliance on the warrant was not in good faith.

## II. Analysis

### A. Probable Cause

In order to determine if the affidavit establishes probable cause, the Court considers the totality of the circumstances, including the veracity and basis of knowledge of persons suppling hearsay information. *See Illinois v. Gates*, 462 U.S. 213 (1983). "'[T]he duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.'" *United States v. Laughton*, 409 F.3d 744, 747 (6th Cir. 2005)(quoting *Gates*, 462 U.S. at 238-39). The magistrate's determination of probable cause is afforded great deference and is not set aside unless the Court finds that the magistrate's discretion was arbitrarily exercised. *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000)(*en banc*). "[T]he task of the issuing magistrate is 'simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, ... there is a fair

3

probability that contraband or evidence of a crime will be found in a particular place.' "
*Laughton*, 409 F.3d at 747 (quoting *Gates*, 462 U.S. at 238).

Defendant argues in his brief that the Warrant Affidavit failed to set forth facts establishing a sufficient nexus between the place to be searched and the items to be seized and therefore lacked probable cause. He relies principally on *Laughton* for support.

In *Laughton*, the Court held that the investigating officer's affidavit failed to establish probable cause because it "failed to make any connection between the residence to be searched and the facts of criminal activity that the officer set out in his affidavit. That affidavit also failed to indicate any connection between the defendant and the address given or between the defendant and any of the criminal activity that occurred there." 409 F.3d at 747. Contrary to Defendant's arguments here, the warrant affidavit in this case has shown a connection between the residence searched and criminal activity that Officer Diaz observed, and also indicated a connection between Defendant and that observed criminal activity.

The warrant affidavit shows that the reliable informant ("SOI") recently observed Defendant with drugs and informed Officer Diaz of his method of operation:

> Within the last twenty four hours from the date of this affidavit for search warrant, the SOI informed affiant that (s)he observed "Tank," who will be referred to as S1 for the remainder of this affidavit for search warrant, in possession of an amount of cocaine for sale. The SOI informed that S1 transports cocaine in a (1984) four door, black Oldsmobile with a white vinyl top and a Michigan license place of ADY-9668 (registered to Tiffany Jones of 4456 Fairview per Secretary of State Records). The SOI also informed of S1's routine, stating that S1's clients will call him on his cell phone to order cocaine and then meet him at a predetermined location where the narcotic transaction will take place. The SOI also stated that S1 makes several trips back and forth to his house to pick up more cocaine as clients request delivery.

4

(Warrant Aff. at 2).

The warrant affidavit also establishes that Officer Diaz observed Defendant leave the Bradford house and immediately conduct what, in the Officer's experience, looked like drug transactions:

> Within the last forty hours from the date of this affidavit for search warrant, affiant followed S1 from 19567 Bradford to the Sunoco gas station located at 9000 Conner, where S1 met with two separate individuals, consistent with S1's method of doing a drug transaction. None of the individuals, including S1, pumped gas or went into the business establishment. S1 met with the two separate individual inside of his car for less than five minutes and left the location. Affiant also followed S1 to at least three other separate narcotic locations, some which are currently under investigation. At one of the narcotic locations, affiant observed a lot of activity, including coming and going of high priced vehicles, which affiant finds consistent with that of drug dealing activities based on past experience.

(Warrant Aff. at 2).

The warrant affidavit also shows that the affiant set up surveillance of the Bradford address and observed behavior that, in the Officer's experience, looked like drug transactions being conducted at the that Bradford Address:

> On April 7, 2006, affiant, set up surveillance at 19567 Bradford for approximately thirty minutes and observed two separate individuals arrive late at night, stay less than seven minutes and leave the area. The first individual drove up in a silver four-door, 2006 Chrysler Charger with a Michigan license plate of AET-7297 (per the Secretary of State records, no registration information). The second individual drove up in a black vehicle with a license plate of YSS-421 (registered to Afredia Diggs of 10974 Haverhill). Affiant has learned that S1 only allows selected clients to his house, when they are going to buy a large quantity of narcotics. S1 is known to be very secretive of where he stays to prevent being targeted and getting robbed. S1 also attempts to maintain traffic to a mere minimum in an attempt to avoid detection and capture from police agencies.

(Warrant Aff. at 3) This too is consistent with Defendant's method of conducting a drug transaction.

In *Laughton*, the warrant affidavit did not establish a sufficient nexus between the place to be searched, the defendant, and the items seized. The same cannot be said for this warrant affidavit. The warrant affidavit at issue here clearly lists the address of the location to be searched. It also states that Defendant was followed from that Bradford address to the gas station, where the officer observed activity that fits the pattern of a drug deal. The Affiant Officer set up surveillance at that Bradford address, where again, the Affiant Officer observed similar drug-related activity.

Considering the totality of the circumstances, this Court concludes that there was a fair probability that contraband or evidence of a crime would be found at the Bradford address. Because there is a connection between (1) the place searched and the named Defendant; (2) the Defendant and observed criminal activity; and (3) criminal activity and the Bradford residence, the warrant affidavit does provide a substantial basis for probable cause.

Even if the Court were to find otherwise, the good faith exception to the exclusion rule applies under the facts of this case.

**B. Good Faith Reliance**

"The standard by which an affidavit should be judged for purposes of the good faith exception is a less demanding showing than the 'substantial basis' threshold required to prove the existence of probable cause in the first place." *Id.* at 748 (internal quotations and citations omitted). *Laughton* instructs that the test for application of the good faith exception is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." (internal quotations and

citations omitted).

In addition to the facts discussed above, the following factors show that Officer Diaz was a reasonably well-trained officer who would not have known that the search was illegal. She had 12 years of law enforcement experience and prior knowledge of Defendant's drug activities from previous investigations. The confidential informant she relies upon had proved to be reliable in the past. She had observed Defendant leave the Bradford address and immediately engage in what looked like drug transactions. Finally, she knew that a mere two weeks before the issuance of this warrant, Defendant was arrested for a controlled substance violation. (Warrant Aff. at 2).

Moreover, this is not a situation like those identified in *Laughton* where reasonable reliance can never be found. It cannot be said that:

> (1) when the warrant [was] issued it [was] on the basis of an affidavit that the affiant [knew] (or [was] reckless in not knowing) contain[ed] false information; (2) ... the issuing magistrate abandoned his neutral and detached role and serve[d] as rubber stamp for police activities; (3) ... the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; [or] (4) ... the warrant [was] so facially deficient that it [could not] reasonably be presumed to be valid.

*Id.* at 748 (internal quotations and citations omitted).

Here the warrant affidavit is more than bare bones. The warrant affidavit provides a substantial basis to conclude that there was a connection between (1) the Bradford location and Defendant; (2) Defendant and the ongoing criminal activity; and (3) the Bradford address and the ongoing criminal activity.

**III. Conclusion**

For the reasons set forth above, Defendant's Motion to Suppress Evidence is DENIED.

7

```
                s/Nancy G. Edmunds
                Nancy G. Edmunds
                United States District Judge
```

Dated: April 3, 2008

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 3, 2008, by electronic and/or ordinary mail.

```
                s/Carol A. Hemeyer
                Case Manager
```